[No. 14476.   Department Two. — January 3, 1893.]

J. W. McDONALD, Respondent, v. H. L. DODGE,
Appellant

Street Assessment — Protest by Majority of Frontage — Stoppage of Work — Presumption upon Appeal. — An appellant, to be successful, must show error; and where the record upon appeal from a judgment foreclosing a lien for a street assessment discloses a written protest by a majority of the frontage of the property fronting on the proposed work involved in the action, and does not disclose whether the proposed work was not done in a block lying between blocks already graded, in which case the protest would not have the effect to stop the work by the terms of the statute, it will not be presumed, against the validity of the judgment, that the block in question was not between graded blocks, but was a kind of work which, under the terms of the statute, such written protest would have the effect to stop for the period of six months.

Id. — Action of Supervisors — Approval of Mayor. — Where the resolution of intention to do street-work in San Francisco and the resolution ordering the work were regularly passed by the board of supervisors, and the resolution approving the award was passed by a three-fourths vote of the board, the resolutions are sufficient, and the approval of the mayor is not requisite.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. M. Wood*, for Appellant.

*J. C. Bates*, for Respondent.

McFarland, J. — This is an appeal by defendant from a judgment in favor of plaintiff in a street assessment case, arising in the city and county of San Francisco, and from an order denying a new trial. There are only two points made by appellant which need special notice.

1. Appellant's counsel contends that the record shows a written protest by a majority of the frontage of the property fronting on the proposed work involved in this action (which fact may be taken for the present as true), and that therefore the assessment sued on was void, because section 3 of the street law of 1883, as

amended by the act of March 14, 1889 (Stats. 1889, p. 158), provides that such a protest "shall be a bar for six months to any further proceeding." To this counsel for respondent replies, that said section provides that the work "shall not be stayed by any written or other protest, unless such council shall deem proper," and neither counsel makes the slightest reference to the possibility of reconciling those two apparently incongruous provisions. But upon an examination of the section, which is a very long one, we find its provisions to be, that with respect to certain kinds of work and certain conditions of property, a protest, of itself, stops proceedings for six months; while with respect to other kinds of work, and other conditions of property, a protest has not such effect. And among other things, it provides that a protest shall not stop proceedings in a case where the proposed work is to be done in a block lying between blocks which have been already graded. Now, whether or not such was the condition of the block upon which the work was done in the case at bar does not appear. No such issue was raised by the pleadings, and whether or not there was evidence upon the point we cannot tell. There is nothing upon the subject in the record. This being so, we will not presume, against the validity of the judgment, that the block in question was not between graded blocks. An appellant, to be successful, must show error.

2. Appellant contends for a reversal because the resolution of intention and the resolutions ordering the work and approving the award were not presented to or approved by the mayor.

The act clearly provides that the city council shall pass the resolution of intention, and order the work; and with respect to the award the provision is, that it "shall be approved by the mayor or a three-fourths vote of the city council." By section 34 of the act, it provides that "the term 'city council' is hereby declared to include a body or board which, under the law, is the legislative department of the government of any city."

In San Francisco, the board of supervisors is the "body or board" which forms the legislative department of the government of the city. It is true that the mayor, by virtue of his right of veto in certain cases, has some of the law-making power of the municipality; but the charter of the city does not make him a part of the "legislative department," in the sense that no independent power is or can be given to the latter. (See *Brooks* v. *Fischer,* 79 Cal. 173.) Throughout the street law, above referred to, there is a distinction between the city council and the mayor, — independent duties and powers being assigned and given to each. In the case at bar, all the necessary proceedings to and including the ordering of the work were duly taken by the board of supervisors, and the award was approved by a three-fourths vote of said board. This was sufficient.

The other points made by appellant do not need discussion; it is sufficient to say that they are not tenable.

Judgment and order affirmed.

DE HAVEN J., and GAROUTTE, J., concurred.

Hearing in Bank denied.