[No. C000964. Third Dist. Aug. 26, 1987.

NORMA PRICE, as County Clerk, etc., Plaintiff and Appellant, v. TENNANT COMMUNITY SERVICES DISTRICT et al., Defendants and Respondents.

COUNSEL

Frank J. DeMarco, County Counsel, and William P. Stanley, Assistant County Counsel, for Plaintiff and Appellant.

James J. Johnson, Kirsher, Winston & Boston and Robert D. Winston for Defendants and Respondents.

## OPINION

SPARKS, J.—This case turns on who is empowered to fill vacancies on the board of directors in a community service district when only one director remains in office. The issue is whether the county board of supervisors or the remaining director has the power of appointment. Norma Price, the Siskiyou County Clerk, instituted a declaratory relief action against Tennant Community Services District (TCSD) and its then sole remaining director, Janet Chessler, to determine whether a single remaining director of a community services district was authorized under Government Code section 1780 to make appointments to the vacancies on the district's board of directors. The trial court concluded a sole remaining director had such authority. We conclude otherwise and shall reverse.

### FACTUAL BACKGROUND

TCSD is a community services district created under the Community Services District Law. (Gov. Code, § 61000 et seq.)[1] It has an authorized board of directors consisting of five members. The board of directors of TCSD began its variation on the theme of Ten Little Indians in the spring of 1986. At the beginning of May 1986 there existed one vacancy on the board which was scheduled to be filled by election. A second seat became vacant on May 9, 1986, when one of the directors was found to be disqualified because he was not a registered elector residing within the district boundaries at the time of his appointment. On June 3, 1986, two other directors resigned, leaving Janet Chessler as the sole remaining director of TCSD.

On June 6, 1986, the county clerk sent Ms. Chessler a notice of vacancy announcing the Siskiyou County Board of Supervisors' intention to appoint new directors for two of the vacancies. The notice clearly evidenced the county's intention to appoint new directors without waiting 60 days for the board of directors of TCSD to act as would be statutorily required if director Chessler had the initial authority to make any appointment. (§ 1780, subd. (b).)

Notwithstanding that notice, director Chessler appointed Mr. DeFilippis to the TCSD board of directors on June 9. The following day his appointment papers were accepted for filing by plaintiff's office and on June 11, he received a notice of recognition on his appointment from plaintiff. Five days

---

[1] Under the Community Services District Law, the voters of any unincorporated territory may create such a district. (Gov. Code, § 61100 [all further statutory references are to this code unless otherwise noted].) Among other things, the district may provide water, sewer, fire, transportation and police services. It may also supply street lighting, recreational facilities, libraries, bridges and airports. (§ 61600.)

later, apparently against a backdrop of accusations that he held office illegally, Mr. DeFilippis resigned again leaving Ms. Chessler as the sole remaining board member.

On June 18 the county clerk filed this declaratory relief action alleging a controversy over whether the board of supervisors or director Chessler should appoint new members to TCSD's board. Ms. Chessler responded eight days later by appointing Jane and Rutherford Ross, apparently her housemates, to the board of TCSD. Ms. Chessler also appointed a new secretary for TCSD.[2] On August 15, this new board of three members then called an election to fill the vacancy left by the resignation of Mr. DeFilippis. The board of supervisors ratified the call for an election, but still contended Chessler's appointments were invalid.

In the meantime the case proceeded to trial. After a bench trial, judgment was entered in defendant Chessler's favor, finding her appointments were authorized by section 1780. This appeal by the county clerk followed.

DISCUSSION

The Community Services District Law provides each district shall have a board of three or five directors, as stated in the petition for formation, all of whom are to be elected at large. (§ 61200.) The petition for formation may provide that the county board of supervisors shall originally act as the district's board of directors. (§ 61102.5) In that case, a separate board of directors may then be elected later. (*Ibid.*) That procedure was used in the formation of this district and a separate board of five directors was thereafter elected. With respect to such later elected directors, section 61204.1 provides that "[n]otwithstanding any other provision of law, a vacancy occurring in the office of a director who has been elected pursuant to Section 61102.5, shall be filled pursuant to Section 1780."

All parties to this action agree the vacancies on the TCSD board are to be filled pursuant to section 1780. The dispute is over what procedures that section authorizes when there is only one remaining director.

---

[2] Robert Winston, who has acted as counsel for TCSD in the past, filed a document with this court stating that TCSD joins in the contentions of the county clerk's opening brief. Defendant Chessler has made a motion to strike this joinder of brief on the ground that Mr. Winston is not the authorized attorney of record for TCSD. On July 9, 1986, Ms. Chessler wrote to Mr. Winston purportedly terminating his employment as attorney for TCSD. On September 8, 1986, a resolution was adopted by defendant Chessler and Jane and Rutherford Ross which purported to discharge Mr. Winston and substitute in Mr. Johnson as TCSD's attorney of record. Just as we conclude Ms. Chessler did not have the authority to appoint new members to the board of TCSD and that her purported appointments were invalid, we also conclude defendant Chessler lacked the authority on her own to discharge Robert Winston as the attorney of record for the district. Defendant Chessler's motion to strike is denied.

Section 1780 states, in pertinent part: "(a) Notwithstanding any other provision of law, a vacancy in any elective office on the governing board of a special district, . . ., shall be filled as provided in this section. *The remaining district board members may fill the vacancy by appointment* . . . . Appointments pursuant to this subdivision shall be made within a period of 60 days immediately subsequent to the effective date of such vacancy. . . . In lieu of making an appointment *the remaining members of the board may within 60 days of the vacancy call an election* to fill the vacancy. . . . [¶] (b) If the vacancy is not filled by the district board as specified, or if the board has not called for an election within 60 days of the vacancy, the city council of the city in which the district is wholly located, or if the district is not wholly located within a city, the board of supervisors of the county representing the larger portion of the district area in which the election to fill the vacancy will be held, may fill the vacancy within 90 days of the vacancy, or the city council or county supervisors may order the district to call an election to fill the vacancy. . . . [¶] (c) If within 90 days of the vacancy the remaining members of the board or the appropriate board of supervisors or city council have not filled the vacancy and no election has been called for, the district shall call an election to fill the vacancy. . . ." (Italics added.)

The parties have not cited us, and we have been unable to find, any cases interpreting section 1780. Turning then to this question of first impression, defendant Chessler asserts that the phrase "the remaining members" means the sole remaining member may appoint. The county clerk argues that this language is conditioned by other statutory provisions so that only an effective majority of those remaining on a district's board of directors may act to fill a vacancy by appointment or by calling an election. In our view, the county clerk has the better argument.

Under the Community Services District Law, the board of directors is the governing body of a district. (§ 61300.) Unless otherwise provided, the powers of a district must be exercised by the board. (§ 61301.) The manner of exercising those powers is prescribed by statute. "The board shall act only by ordinance, resolution, or motion." (§ 61223.) In order to so act, the affirmative vote of a majority of the board members is required. "No ordinance, resolution, or motion shall be passed or become effective without the affirmative votes of at least a majority of the members of the board." (§ 61225.) A majority, by definition, is the number greater than half of any total. (Black's Law Dict. (5th ed. 1979) p. 860, col. 2.) Thus, the majority of the five member board of directors of TCSD is three.

A quorum of the TCSD board is also three directors. "A majority of the board shall constitute a quorum for the transaction of business."

§ 61224.) A quorum means the number of members of a body as is competent by law to transact business. (See *People* v. *Dale* (1947) 79 Cal.App.2d 370, 375 [179 P.2d 870]; see also 4 McQuillin, Municipal Corporations (3d ed. rev. 1985) Quorum Generally, § 13.27, p. 697.) Thus, the statutes of the Community Service District Law, when construed together, require the affirmative vote of three members of the board of directors before any act of the board can become effective.

This construction was adopted by the Attorney General in his analysis of the quorum requirement of a similar agency in 55 Ops.Cal.Atty.Gen. 26 (1972). There the question was whether a majority of the five member board of directors of a water district required a majority of the whole board (three members) or only a majority of a quorum of the board (two members). Interpreting statutory language identical to that at issue here, the Attorney General concluded that a majority vote of the whole board, or three votes, was necessary for any action by the board. With appropriate changes in the statutory references, the opinion stated: "It is significant that the Legislature has enacted two separate provisions or sections, one expressly dealing with the minimum number of members competent to transact business (the quorum section) and another dealing with the minimum number of votes necessary for effective action (effective action section). If the Legislature had intended that a majority of a quorum constituted of a simple majority of the members of the board could effectively adopt or pass an ordinance, resolution or motion, we believe it would have enacted only section [61224]; or if it were inclined to enact two sections on the matter, it would have used the words 'majority of the members present' or 'majority of a quorum,' instead of the phrase 'at least a majority of the members of the board,' in section [61225]. It is also significant that in the quorum section [61224] the Legislature has referred to a 'majority of the board,' whereas in the effective action section [61225] the Legislature has used the phrase 'the *affirmative* votes of a least a majority of the *members of the board*' (italics added)." (*Id.,* at p. 28.)

The question remains whether the requisite number is changed when there are vacancies on the board. Nothing in section 1780 suggests that the Legislature meant to authorize remaining board members to fill a vacancy when there were less than a majority of three members. The authority of the board to act on filling a vacancy, as it is on any other matter, is still circumscribed by the sections requiring a majority. (§§ 61224, 61225.) We are required to read these statutes as a harmonious whole. "It is well established that a specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d

1081].) ██ Hence, the remaining board members of TCSD may fill vacancies under the authority of section 1780 if, but only if, there are at least three members left to constitute a majority under sections 61224 and 61225. Consequently, it requires the affirmative vote of at least three directors to fill a vacancy. If there are not three directors in office, the power of appointment then falls to the board of supervisors. It follows with even greater force that a single director does not have the power fill an vacancy. Indeed, it is nonsensical to talk about a quorum or majority of one.

Defendant Chessler claims the phrase "remaining district board members may fill the vacancy by appointment" means any number of incumbents may appoint, even if only one is left. She cites as support for her contention one of the preliminary definitions in the Government Code. Section 13 provides "[t]he singular number includes the plural, and the plural the singular." She also cites *Nesbitt* v. *Bolz* (1939) 13 Cal.2d 677 [91 P.2d 879] and an opinion of the Attorney General, 49 Ops.Cal.Atty.Gen. 30 (1967), as supporting authority for the proposition that less than three members may fill vacancies. As we shall see, none of the cited authorities advances defendant's position.

In *Nesbitt,* two members of the five-member city council of the City of Arcadia were recalled in an election held under the 1931 Municipal Elective Officers Recall Law. Under that law, if a majority of those voting on the recall also favored a special election to fill the vacancies created by the recall, then such an election was required to be called forthwith. " 'Otherwise the council shall forthwith fill the vacancy or vacancies by appointment.' " (*Id.,* at p. 679.) The recall law further provided that in the event a majority of the council were recalled, the defeated members retained their offices until their successors were qualified. A majority of the voters at the Arcadia recall election chose to have the city council fill the vacancies rather than calling a special election. But before the remaining three councilmen could act upon the matter of filling the vacancies, one of them resigned. The resignation left just two sitting councilmen. These two councilmen refused to meet and appoint new councilmen on the ground that they did not constitute a quorum of the city council and hence had no authority to transact any business. The city clerk brought a proceeding in mandate to compel the two councilmen to appoint new members to fill the vacancies. Issuing the writ, the California Supreme Court concluded the remaining two members could fill the vacancies. In reaching this conclusion the high court undertook a specific analysis of the legislative intent evidenced by the recall statutes. Under the statutes then in effect, the court recounted, certain functions, such as the enactment of ordinances, required the concurrence of at least three members. But the filling of vacancies did

not; "there is no question but that a council of three members is directed and required to elect the successors of two recalled councilmen and that two of them constitute a quorum for that purpose." *(Id.,* at p. 679.)

Unlike defendant, we do not read *Nesbitt* as standing for the general proposition that the remaining members of the governing board of a public agency are always authorized, regardless of their number or the governing statutes, to fill vacancies on the board. *Nesbitt* interpreted a statutory scheme which authorized less than a majority of the whole board to fill vacancies under some circumstances. No similar statutory authorization is present here.

Nor do we find the Attorney General's reasoning in the opinion cited to us, 49 Ops.Cal.Atty.Gen. 30, *supra,* to be persuasive of defendant Chessler's claimed authority under section 1780 to fill vacancies on the TCSD board of directors. In the cited opinion, the question involved the interpretation of former Elections Code section 23505. This section governed the terms of office of directors of special districts subject to the Uniform District Election Law. (Elec. Code, § 23500 et seq.) In the case of the five-member county water district board which was the subject of the question to the Attorney General, former Elections Code section 23505 provided the terms of three board members would expire in April 1967 and their successors would be elected at the next general election to take office on the last Friday in December following their election. With respect to the gap created between the expiration of the three members' terms and the assumption of office by their elected successors, former Elections Code section 23505, subdivision (d), provided "[a]ny vacant office resulting from the operation of this section shall be filled by the board of directors; . . ." Reading subdivision (d) in the context of these statutorily created vacancies, the Attorney General reasoned that the Legislature must have contemplated that two members would be competent to fill vacancies. This followed because the statute provided the three members offices would become vacant for a period between the expiration of terms and election of successors and yet it also provided "the board" should fill the vacancy. In these circumstances, the Attorney General concluded that "the two remaining members of a five-man governing board of a special district would be competent to fill the vacancies . . . ." *(Id.,* at p. 33.) To that conclusion he added this critical proviso: "[P]rovided the quorum statute which governs the operation of their board does not require action by a majority of all of the members elected." *(Ibid.)* Since we conclude that the quorum statute governing TCSD does require a majority of the entire board of five members, the cited opinion has no bearing on the case under review.

Even less persuasive is defendant Chessler's argument that section 13, which provides the singular includes the plural and vice versa, mandates a

holding that a sole remaining member of a community services district board is authorized to fill the vacancies on the board. Section 13 is subject to the usual qualification that the definitions given in such preliminary sections govern the construction of the Government Code "[u]nless the provision or the context otherwise requires . . . ." (§ 5.) ■ Preliminary definitions are superseded when they obviously conflict with the Legislature's subsequent use of the term in a different statute in a different context. (*Diamond View Limited* v. *Herz* (1986) 180 Cal.App.3d 612, 617-618 [225 Cal.Rptr. 651].) We conclude such is the case here.

As we noted in *Diamond View,* "the Supreme Court has repeatedly held that the ' "fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purposes of the law." In determining such intent, the court must first look to the words of the statute.' (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338], citations omitted.) The words of a statute must be read *in context,* bearing in mind the nature and obvious purpose of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)" (*Diamond View Limited* v. *Herz, supra,* 180 Cal.App.3d at pp. 617-618, italics added.)

■ We read section 1780 as a specific provision for filling board vacancies within the overall context of the Community Services District Law. That law expressly mandates that "[t]he board shall act only by ordinance, resolution, or motion." (§ 61223.) It further directs that "[a] majority of the board shall constitute a quorum for the transaction of business" and that "[n]o ordinance, resolution, or motion shall be passed or become effective without the affirmative votes of at least a majority of the members of the Board." (§§ 61224, 61225.) Given this context, action of the board to fill a vacancy can be taken by no less a vote.[3] Section 1780, in authorizing "the remaining members" to fill vacancies, presupposes there will be sufficient remaining directors to take action as required by sections 61224 and 61225.

In summary, we hold that when the remaining members of a community services district board such as TCSD constitute less than a majority of the

---

[3] We reject defendant Chessler's argument that the preliminary language of section 1780 to the effect that "notwithstanding any other provision of law, . . . [t]he remaining members shall fill the vacancy", precludes our reading section 1780 together with sections 61223 through 61225. The "notwithstanding any other provision of law" language in section 1780 references only other provisions of law relating to filling vacancies on district boards. It certainly does not require us to read the section in a vacuum sucked from its statutory context.

entire five-member board, the authority to fill outstanding board vacancies by appointment or to call for an election passes to the board of supervisors pursuant to section 1780, subdivision (b).

The judgment is reversed and the cause remanded to the trial court with directions to enter a new and different judgment in favor of plaintiff Norma Price as prayed.

Blease, Acting P. J., and Carr, J., concurred.

The petition of respondent Tennant Community Services District for review by the Supreme Court was denied November 10, 1987.